Albert Rossio v. Commissioner.
Rossio v. Commissioner
Docket No. 11547.
United States Tax Court
1947 Tax Ct. Memo LEXIS 28; 6 T.C.M. (CCH) 1240; T.C.M. (RIA) 47314; November 26, 1947
*28 Petitioner and his wife carried on a retail jewelry business under a written partnership agreement. The store was located on the third floor of an office building and the business transacted depended upon solicitation and personal recommendation. As a rule the petitioner and his wife opened the store in the morning, and closed it in the evening, returning home together. They managed the business jointly. Practically every morning petitioner was required to be absent until noon to solicit business, purchase materials and for other business purposes. At such times, and whenever petitioner was otherwise absent from the store, the wife was in complete charge and management of the business. Thirty per centum of the purchases and thirty to thirty-five per centum of the total sales were made by her. She performed other duties as well. Held, that the petitioner and his wife were partners within the purview of the income tax statutes and that petitioner is taxable on only seventy-five per centum of the profits of the business. Vincent M. DeMelto, Esq., 1200 Marshall Bldg., Cleveland, Ohio, for the petitioner. Howard M. Kohn, Esq., for the respondent. VAN FOSSAN Memorandum *29 Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of $4,539.35 for 1941 and in income and Victory taxes of $12,982.53 for 1943. The only question to be determined is whether the business of Rossio Jewelry Company was a partnership composed of petitioner and his wife for income tax purposes. Findings of Fact The following facts were stipulated: The petitioner is a resident of Cleveland, Ohio, and his income tax returns for 1941, 1942 and 1943 were filed with the collector for the 18th district of Ohio. The petitioner entered into the retail jewelry business in the Citizen's Building, Cleveland, Ohio, in February 1929 with an original investment of $2,234.53. He engaged in this business as sole proprietor through the year 1936 doing business as Rossio Jewelry Company. On May 30, 1935, petitioner was married to June Kamps. The net income or loss of petitioner's business for each year from 1929 to 1936, inclusive, was as follows: Year
Income
Loss
1929
$ 9,144.36
1930
3,508.32
1931
3,847.00
1932
$2,788.90
1933
1,562.69
1934
6,201.79
1935
3,538.25
1936
12,352.10 As of December 31, 1936, the net worth *30 of the business was $22,727.54 and it had an inventory of $15,408.45. Under date of January 2, 1937, the petitioner and his wife entered into an agreement as follows: "Contract, made and concluded this second day of January A.D. 1937 by and between Albert Rossio, of the city of Cleveland, County of Cuyahoga, and State of Ohio, party of the first part, and June R. Rossio, of the same place, party of the second part. "The said party of the second part agrees to and with the said party of the first part, to place the loan of Four Hundred dollars ($400.00) oweing [owing] to the party of the second part, by the party of the first part into the business of the Rossio Jewelry Company of same place, now owned by the party of the first part, for a consideration of one-fourth interest of said business, and together form a partnership, to operate the said jewelry business, and from this day to receive one-fourth of the net profits derived therefrom. "The party of the first part, agrees to sell to the party of the second part the one-fourth interest in the said jewelry business to the party of the second part, for and in consideration of the Four Hundred dollars ($400.00) and hereby *31 cancells the loan as above specified, and agrees to pay to the said party of the second part the one-fourth of the net profits derived from the operation of said business. "In witness whereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written." Returns on partnership forms were filed in the name of Rossio Jewelry Company for the years 1937 through 1943. The net income of the business reported on such returns is as follows: Year
Net Income
1937
$17,452.68
1938
9,170.62
1939
8,779.20
1940
18,320.01
1941
35,758.39
1942
36,050.26
1943
59,641.11
On May 25, 1942, the Commissioner mailed to petitioner a notice of deficiency wherein he determined that petitioner was the owner of the business and that the entire income thereof was taxable to him and asserted a deficiency of income tax for the years 1938, 1939 and 1940 in the amount of $1,360.15. On September 11, 1942, the petitioner paid the deficiency. Upon the advice of counsel, who represented petitioner in the above tax deficiency matter, petitioner and his wife under date of October 31, 1941, entered into a new partnership agreement, which *32 is as follows: "This agreement made and concluded this 31st day of October, 1941 by and between Albert Rossio of Cleveland, Ohio, and June R. Rossio of Cleveland, Ohio. "Whereas the parties hereto did on the 2nd day of January, 1937 enter into a partnership agreement and which agreement is attached hereto by reference and made a part hereof, and "Whereas said partnership agreement entered into on said date did not specifically set forth the duties that each partner was to perform and further did not set forth the definite time during which the partnership should be in existence and for that reason this new contract of partnership is drawn. "Article I. That the parties hereto have agreed to and do by these presents become partners under the firm name and style of ROSSIO, JEWELERY [JEWELRY] CO. with its principal office and place of business located at 301 Citizens Building, Cleveland, Ohio. "Article II. The purpose and business of said partnership shall be the buying, selling of precious stones and the buying, selling, manufacturing and repairing of jewelry and the doing of all things necessary and incident thereto. "Article III. The said Albert Rossio shall contribute *33 to the capital of said partnership his skill, knowledge and experience as a jeweler and his entire time and attention and shall further contribute seventy-five per cent (75%) of all the net assets of every kind and description now used in the operation of the ROSSIO, JEWELERY [JEWELERY] CO. located at 301 Citizens Building, Cleveland Ohio and further contribute seventy-five per cent (75%) of all the monies now on deposit to the credit of the partnership entered into on the 2nd day of January, 1937, and shall further contribute to said partnership seventy-five per cent (75%) of all outstanding assets by reason of accounts receivable. The said June R. Rossio shall contribute to the capital of the said partnership her skill, knowledge and experience as a jeweler and such of her time as is convenient for her to devote in the operation of said business and shall further contribute twenty-five per cent (25%) of all the monies now on deposit to the credit of the partnership entered into on the 2nd day of January, 1937, and shall further contribute to said partnership twenty-five per cent (25%) of all the net assets of every kind and description now used in the operation of the ROSSIO, JEWELERY *34 [JEWELERY] CO. located at 301 Citizens Building, ClevelandOhio and shall further contribute to said partnership twenty-five per cent (25%) of all outstanding assets by reason of accounts receivable. "Article IV. That Albert Rossio shall devote his entire time, skill and labor and experience in advancing and rendering profitable the interest and business of said partnership and shall not engage in any other business or occupation whatsoever on his individual account during the existence of said partnership without further having obtained such written permission from June R. Rossio. "Article V. Each partner may make and take contracts for and on behalf of the said partnership business, but contracts or purchases involving a liability of more than Five Hundred Dollars ($500.00) shall be made only on full consultation and with the approval of both partners. All contracts shall be made and taken only in the firm name. In case of disagreement as to making, taking or assuming any contract or obligation by the firm, such contract or obligation shall not be made or entered into. "Article VI. Each partner agrees that all gain, profit, advantage and increase which shall arise by reason *35 of said partnership or joint business as aforesaid shall be from time to time during the existence of said co-partnership divided between them them [them] in the following manner: seventy-five per cent (75%) to Albert Rossio and twenty-five per cent (25%) to June R. Rossio and all losses and expenses that shall happen or be incurred in said business without fraud, shall be paid and borne as follows: seventy-five per cent (75%) to Albert Russio and twenty-five per cent (25%) to June R. Rossio. "Article VII. Neither partner shall release or cancel any indebtedness or obligation due to the partnership except on full pay, nor shall either give or extend credit to any person or company without the consent of the other, which consent can be of a verbal nature. "Article VIII. Neither partner shall at any time sign the firm name or his own name or pledge the firm's credit or individual credit in any manner as surety or guarantor on any paper, bill, bond, note or draft or other obligation whatsoever. Neither partner shall assign, pledge or mortgage any of the partnership property or his interest therein, or do anything or permit any act whereby the firm's money, interests or property, *36 or his interest therein may be liable to seizure, attachment or execution. "Article IX. Each partner shall faith-fully and honestly do and administer each and every part of the work undertaken or taken charge of by him or by them solely for the profit and advantage of the partnership. "Article X. There shall be kept at the principal office and place of business of the firm at all times during the continuance of said partnership, true, accurate, full and complete books of account in which shall be entered all monies received and disbursed by said partners, or either of them, or their agents or employees; all goods, wares, merchandise and other property bought and sold for or on account of the business of the firm; all contracts, undertakings, obligations, debts and liabilities taken or incurred, and also all other matters and things in any manner appertaining or belonging to the business of said firm. "It shall be the duty of Albert Rossio to faithfully, carefully and accurately keep the books and accounts as aforesaid; and to furnish to June R. Rossio, on request, accurate and complete information of all transactions and things of said business. Each partner shall at all times *37 have free access to said books and to all papers, documents and writings belonging to the firm, without interruption or interference from the other. "Article XI. It shall be the duty of Albert Rossio to attend to and have charge of the finances, moneys and accounts of said firm, collect the bills, accounts and moneys due to said partnership. All moneys received by said partners, or either of them, from the said business or in any way coming thereto, shall be daily deposited in a bank agreed upon between the partners to the account and credit of the ROSSIO, JEWELERY [JEWELRY] CO. "Article XII. The said Albert Rossio may draw from the profits of said business the sum agreed upon and the said June R. Rossio may draw from the profits of said business the sum of money agreed upon. The amount so drawn shall be charged against the share of the profits of said partners at each annual account. All surplus profits, however, shall be left to the credit of the partnership and shall not be divided unless by mutual consent when any part of such profits may be withdrawn. "Article XIII. It is further agreed that Albert Rossio shall have the full and complete management of said business and *38 the sole right to hire and discharge any employees engaged by said partnership. "Article XIV. This agreement shall be binding and in force and the term of this partnership shall be for the period of ten (10) years from the date hereof, unless sooner terminated and dissolved by consent or by the death, bankruptcy, insolvency, or disability of either party. [Article XV was omitted from agreement.] "Article XVI. If any controversy or difference shall arise between said partners, at any time during the continuance of said partnership, or thereafter and before final settlement, between the partners, regarding the business, accounts or transactions of said partnership, or the construction of these articles, or the valuation of assets, or the rights, powers or liabilities of the partners, or any other matter or thing connected with said partnership, then each and every such controversy and difference shall be submitted to the decision of three disinterested arbitrators, one to be chosen by each of the parties hereto, and the third by the two so chosen; and the award of a majority of said arbitrators shall be final and conclusive upon the parties hereto." The net worth of the business *39 and the amount of inventory at the end of each year for the years 1937 to 1943, inclusive, as shown by balance sheets taken from annual audit reports prepared from the records of petitioner, are as follows: Dec. 31,
Net Worth
Inventory
1937
$ 35,584.07
$23,075.10
1938
38,105.40
30,997.19
1939
40,722.41
30,930.60
1940
53,387.16
41,010.04
1941
80,098.20
54,242.99
1942
97,146.25
71,083.48
1943
131,824.18
68,655.23
Commencing in 1929, petitioner maintained a simple set of accounting records for the business consisting of a single book for each year which contained cash receipts journal sheets for each month, cash disbursements journal sheets for each month, a general journal sheet recording year-end adjustments, and columnar recapitulation sheets on which were recorded monthly totals of the various classes of receipts and disbursements and totals thereof for the year. A separate book was kept for each year. No ledger records were kept and there were no accounts for assets, liabilities, expense or income items, or proprietorship investment, drawings or capital other than the columns of the aforementioned yearly books from which year-end statements *40 were prepared. There was no change in the type of records maintained for the business during the period 1929 to 1943, inclusive. During the years 1929 through 1936, petitioner made drawings from the business in regular amounts weekly, plus additional amounts at irregular intervals, which were recorded in the "Personal Salary" column of the cash disbursements journal for each month of each year and on the recapitulation sheet for each year. During the years 1937 to 1942, inclusive, petitioner continued to make drawings in the same manner as he had done in prior years in regular amounts weekly, plus additional amounts at irregular intervals. His drawings, which constituted the only drawings from the business during the years 1937 to 1942, were recorded, as in prior years, in the "Personal Salary" column of the cash disbursements journal for each month of each year and on the recapitulation sheet for each year. In the yearly recapitulation sheet for 1941 the notation "Partners" appears above the "Personal Salary" column and in the recapitulation sheet for 1942 the notation above the "Personal Salary" column is as follows: 25% June Rossio 75% Albert Rossio Partners. During 1943 *41 petitioner continued to make drawings in regular amounts weekly, plus additional amounts at irregular intervals, which were recorded in the the "Personal Salary" column of the cash disbursements journal as in prior years. During 1943 amounts of $100 per month were recorded in the cash disbursements journal in a column headed "Sundry" and designated "June Rossio." In the 1943 recapitulation, two columns were used to summarize amounts charged to petitioner and his wife during the year. Aggregate amounts so withdrawn and charged to petitioner and to his wife on the business records for the years 1936 through 1943 are as follows: Year
Albert Rossio
His wife
1936
$ 3,832.55
1937
3,962.94
1938
3,798.59
1939
5,974.94
1940
5,287.86
1941
7,377.25
1942
8,534.31
1943
10,273.62
$1,200.00
Amounts paid out of funds of the business as income and property taxes during 1937 to 1943, inclusive, were charged in the "Sundry" columns in the cash disbursements journal sheets. Prior to 1942 such amounts were not identified with respect to the party or parties on whose behalf they were paid but were recorded as single sums identified only as to the nature of the tax. *42 Payments made in June and December 1942 were recorded in the same manner. Amounts paid as income tax in March and September 1942 and throughout 1943 were separately recorded in the "Sundry" columns and designated "Albert Rossio" and "June Rossio," respectively. In the surplus adjustment sections of the year-end audit reports prepared from the business records for the years prior to 1943, adjustments were made for such tax payments without identifying them as being attributable to either Albert Rossio or his wife, except that for 1942 a property tax payment in the amount of $190.48 was attributed to the wife. In the adjustments for 1943 payments made as income and property taxes were separately attributed to each. The petitioner had a commercial account in the name of "The Rossio Jewelry Co." at the Central National Bank, Cleveland, Ohio, commencing March 23, 1933. The signature card on file with the bank contains the signature of petitioner only. A "Partnership Certificate" was filed with such bank on June 3, 1941. This certificate was signed by petitioner and his wife, named them as partners doing business as "The Rossio Jewelry Company" and authorized each, among other things, *43 to execute checks, drafts, notes, orders, bills of exchange and receipts drawn on the funds of the partnership and also to borrow money and to obtain credit for the partnership from the bank on any terms. On February 15, 1943, a commercial account was opened at the Union Bank of Commerce, Cleveland, Ohio, in the name of Rossio Jewelry Company with a deposit consisting of a check for $5,000 drawn on the account in the Central National Bank. "Partnership authorization" dated January 30, 1943, and signature card, both bearing the signatures of petitioner and his wife, were filed on the same date with the bank, authorizing withdrawal from the account on the signature of either. The record discloses additional facts as follows: The petitioner's business or store was located on the third floor of an office building. The customers of the business were such as were acquired by solicitation or upon recommendation. For about two years prior to their marriage in 1935, petitioner's wife worked for her father, who was engaged in the jewelry and engraving business. Prio to that she worked for her father after school hours, on Saturdays and during vacation periods. About a month after their *44 marriage petitioner's wife started to work in petitioner's store and continued working for him without remuneration until the first agreement of January 2, 1937 was entered into between them, with the exception of about three months in 1936 when their first child was born. The mother of petitioner's wife lived with them from about the end of 1935 to 1942 and took care of the household and children, the second of which was born February 6, 1941. After the mother left, a housekeeper was employed. Prior to 1937 petitioner's wife assisted in pricing and selling merchandise and helping generally in petitioner's business. After she was named a partner she relieved petitioner of many responsibilities. She managed the business jointly with him. During his absence she was in full charge and management of the business. Practically every morning the petitioner was away from the store or business until about noon soliciting business, securing materials and otherwise engaged in outside work required by the business. The petitioner always discussed the plans and policies of the business with his wife. She did about thirty per cent of all the purchasing and her sales amounted to about thirty *45 to thirty-five per cent of the total sales made. She worked on an average of seventy hours a week. She worked the same hours as petitioner, went to work with him at about eight o'clock in the morning and they returned home together at about eight o'clock in the evening. During their busy season in October, November, December and January, they worked on some Sundays and at times as late as one to two o'clock in the morning. During the taxable years petitioner's wife was absent from the store for about four months during which period her second child was born, for a week's vacation, and occasionally for several hours for shopping purposes and the like. During the taxable years the petitioner was in a hospital for about a week and was out of town for about 10 days. The $400, referred to in the first partnership agreement as a loan owing by petitioner to his wife, was never paid into the business. The source of the money is not disclosed, except that petitioner was given that amount in 1936 by his wife for the purpose of taking a vacation boat trip. All household expenses were paid out of the funds of the business and charged to the "Personal Salary" account. Except for the withdrawals *46 and payment of income and property taxes, hereinbefore mentioned, no distribution of profits was ever made, it having been the agreed policy to accumulate all other profits. Most of the $1,200 withdrawn in 1943 by the wife was expended by her or at her direction for the purchase of Government bonds, some in the name of June Rossio and her two children and some in the name of June Rossio and petitioner. The business was held out to the public as a partnership. It was reported as a partnership to the Jewelers' Board of Trade and in reports made to the Industrial Commission of Ohio, County of Cuyahoga Auditor, Department of Industrial Relations, and in other reports required by state or federal law. Entries of receipts and disbursements in the records of the business were made daily by a full-time employee. The monthly and year-end recapitulations were prepared by an outside auditor, who also prepared petitioner's income tax returns for the taxable years and other required reports. The petitioner and his wife at the end of 1936 had orally agreed to be partners and upon the advice of such auditor the agreement was reduced to writing. The agreement of January 2, 1937 was drafted by *47 such auditor. Neither petitioner nor his wife had any knowledge of bookkeeping. The Commissioner determined that the entire net profits of Rossio Jewelry Company for the taxable years were taxable to petitioner. The Rossio Jewelry Company, during the taxable years, was a bona fide partnership. Its net profits for each of the taxable years are includible in gross income for income tax purposes on the basis of 75 per cent to petitioner and 25 per cent to his wife. Opinion VAN FOSSAN, Judge: The only question to be determined is whether the petitioner and his wife were partners on a 75/25 basis for income tax purposes. The respondent argues that the wife contributed neither capital nor vital services to the jewelry business; that it is quite plausible that the 1937 agreement was executed upon the advice of the auditor for the purpose of tax savings; that no partnership was intended, hence, if so intended, efforts would have been made to have the books properly audited and set up in such a manner as to reflect the partners' interests in the business; and that actual distributions of profits would have been made. The petitioner went into the retail jewelry business in 1929 with *48 a capital of only $2,234.53. The business or store was located on the third floor of an office building. As of December 31, 1936, the net worth of the business was $22,727.54. This was the result primarily of the efforts of petitioner, and in part, of the efforts of his wife, who started to work for him in June or July of 1935. A substantial portion of the profits was retained in the business. There is no evidence that the partnership agreement of January 2, 1937 was entered into for tax saving purposes. On the contrary, the petitioner testified that it was essential to the further continuation and development of his business that he have someone with authority in the store during the times it was necessary for him to be away therefrom soliciting business and purchasing materials. The business transacted depended upon solicitation and recommendation. Upon becoming a partner the wife took over and shared the responsibility of the business with petitioner. She came to the store with the petitioner in the morning and they returned to their home together in the evening. She devoted as much time to the business as petitioner did. She managed the business during his absence therefrom and *49 at other times they managed it jointly. The testimony of petitioner and his wife to this effect was corroborated by several witnesses. To become a partner with her husband it is not necessary that the wife contribute both capital and services. It is sufficient if she contributes one or the other, i.e., "if she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services." [Italics supplied.] . Herein the wife substantially contributed to the control and management of the business and performed vital additional services. The fact that the records did not disclose the partnership interest in capital investment or profits is not determinative. . Neither petitioner nor his wife had any knowledge of bookkeeping. From the very outset petitioner maintained a very simple set of accounting records. He employed an auditor to check the records and to make monthly and year-end recapitulations. During all the years such simple records were continued. Until 1943 no profits were taken out of *50 the business except such as were necessary for living purposes. The wife testified that it was agreed that the profits should be accumulated. The accumulation of profits undoubtedly was an important factor in the continued growth and expansion of the business, as shown by the increase in net worth of $35,584.07 in 1937 to $131,824.18 in 1943 and the increase in inventory of $23,075.10 in 1937 to $68,655.23 in 1943. In our opinion, the services performed by the wife in the management and operation of the business constituted a vital contribution to its success. They are amply sufficient to support the claim of partnership within the purview of the income tax statutes. Seventy-five per cent of the net profits in the taxable years are therefore taxable to petitioner. Decision will be entered under Rule 50.